**IN THE COURT OF APPEALS OF IOWA**

No. 14-0115
Filed March 26, 2014

**IN THE INTEREST OF K.P.-E.,**
**Minor Child,**

**S.P.-E., Mother,**
      Appellant.

_____

Appeal from the Iowa District Court for Hancock County, Annette Boehlje,

District Associate Judge.

A mother appeals from the order terminating her parental rights.

**AFFIRMED.**

Jane Wright, Forest City, for appellant mother.

Theodore Hovda, Garner, for father.

Thomas J. Miller, Attorney General, Kathrine Miller-Todd, Assistant

Attorney General, and David Solheim, County Attorney, for appellee State.

Philip Garland, Garner, for minor child.

Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**DANILSON, C.J.**

A mother appeals the termination of her parental rights to her child, K.P.-E.[1]  Although the record is clear that the mother has cooperated with the Iowa Department of Human Services (DHS) throughout the proceedings and is bonded with her child, she is still unable to care for her child on a full-time basis after almost a year of services.  "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests."  *In re D.W.,* 791 N.W.2d 703, 707 (Iowa 2010).  We affirm.

**I.  Background Facts and Proceedings.**

K.P.-E. was born in October 2012.  At the time of her birth, the parents were unmarried and spending time residing with different family members.  DHS became involved with the family within the first month of K.P.-E.'s life, after the police were called to the family home for numerous domestic disturbances.  K.P.-E. also had numerous health issues, which DHS feared were not being met.

On December 7, 2012, the parents stipulated to K.P.-E. being adjudicated a child in need of assistance (CINA), pursuant to Iowa Code section 232.2(6)(c)(2) (2011).  The court summarized its findings, concluding:

> [K.P.-E.] is a very young infant (not even two months old at the time of the hearing).  She does have some health difficulties with her breathing and she is on an apnea monitor and being monitored by physicians.  Parents and the child initially resided with [the maternal grandmother], but shortly thereafter parents moved in with [the paternal grandmother].  The couple then split up, and [the mother] left.  The child has remained in the care of father and paternal grandmother for the last several weeks.  There are disputes regarding contact and visitation between child and parents.  Both

---

[1] The parental rights of the father have also been terminated.  He does not appeal, although the record indicates the parents were married and residing together at the time his rights were terminated.

parents have some mental health concerns. The Department's intervention is necessary to monitor the child's health, and ensure adequate contact and opportunity for bonding with each parent. Parents are also in need of parent skill training and development.

On January 11, 2013, K.P.-E. was removed from her parents' care. Both parents missed the dispositional hearing although both were aware of it. In its written order, the court placed K.P.-E. in her paternal grandmother's care, stating:

> The Court finds and concludes that it is contrary to the child's welfare to remain in either parental home at this time, and that continued placement in relative care is in the best interests of the child because the child's medical needs require frequent doctors' appointments and neither parent drives, both parents are unable to meet the child's emotional or physical needs at this time, and the child's mother has not addressed her mental health needs. Additionally, there is a great deal of instability and chaos in parents' lives at the present time.

The paternal grandmother maintained care of K.P.-E. until a drug test came back positive for marijuana use. K.P.-E. was moved to foster care on March 8, 2013, and remained there for the remainder of the proceedings. At the same time, the court ordered the parents, who had married in early January, to participate in family safety, risk, and permanency services; obtain psychological evaluations and comply with any resulting treatment recommendations; obtain their own housing; and demonstrate an ability to support themselves and K.P.-E.

A review hearing was held by the juvenile court on June 28, 2013. The mother requested additional and more intensive services from DHS. The court, finding DHS was providing "reasonable maintenance services," found:

> While the parents are making slow progress, they have also failed to follow the Court's Orders. First, instead of finding suitable housing with no other adults, they have received an interest in [the maternal grandmother's] home. The Court had specifically indicated that they were not to live in that home, yet now they have made a temporary situation permanent. Additionally, both parents were

directed to address their mental health issues. Both continue to miss appointments, fail to attend therapy, and do not take medication as prescribed. Both parents smoke, and make no efforts to stop, despite the fact that [K.P.-E.] has a lung problem that is made worse by cigarette smoke.

The court held another review hearing on September 6, 2013. By that time, K.P.-E. had been removed from the parents care for approximately eight months. The court noted that parents had recently rented an apartment and were almost finished moving in. The father had been approved for disability benefits, which were the only income of both parents. Furthermore, both were attending therapy. However, in his report to the court, the guardian ad litem (GAL) stated:

> I am quite concerned as the progress that the parents have made appears to be minimal and they are some ways away from being able to have the child on their own. It appears that [the father] has a difficult time even performing the slightest of parents tasks and while [the mother] does better, it is by no means approaching having the child even unsupervised for an overnight visit.
>
> While the facts and circumstances certainly are not favoring mom and dad because of their economic situation, it still appears that they have not adequately done things even within those limitations. They would have to make tremendous progress in the next couple months, or certainly a termination will be appropriate.

The termination hearing was held on October 21 and November 22, 2013. At the hearing, the State offered evidence from Dr. Hornback, the doctor of the mother and K.P.-E. The court admitted a letter from Dr. Hornback that was written in July 2013. In it, the doctor stated:

> I have concerns regarding the ability of [the mother] to provide adequate care for this child. In my opinion, [the mother] does not have the mental stability or common sense to properly care for a child. On multiple occasions she has made poor decisions, she asks inappropriate questions, and has no idea about developmental milestones for a baby or what is required to properly care for this child.

The doctor also testified at the termination hearing. She corroborated what she had written in the letter and also stated that the mother was not receptive to her attempts to teach her parenting skills.

The DHS worker also testified. She indicated that the mother had been cooperative with DHS and had made use of the services provided to her. However, the DHS worker did not believe the mother had made sufficient progress to warrant unsupervised contact with K.P.-E., and thus reunification was not possible. The worker also testified she believed that the mother lacked the insight and knowledge necessary to care for a young child; that the mother was "immature" and "lack[ed] social skills"; and that the parents functioned at "more of a junior high kind of level." The worker believed the parents meant well and that they loved their daughter, but she doubted their ability to provide a safe home for their daughter. The worker was also concerned that the mother was less concerned about K.P.-E. when she was outside of her care—noting that the mother had been encouraged to call the foster parents frequently to receive updates about K.P.-E. and had only done so fifteen to twenty times over eight months.

Following the hearing, the juvenile court entered an order stating:

> The parents love [K.P.-E] very much and have tried to comply with the expectations set out by the Court and [DHS]. However, their mental capacity is limited and their ability to parent is similarly limited.
> . . . .
> [The mother] is more attentive to [K.P.-E.] than [the father] is, however, she has difficulty focusing on [K.P.-E.] as well. In fact, if [the father] is around, she tends to focus on correcting him or bickering with him rather than paying attention to [K.P.-E.]. [The mother] has difficulty understanding the parenting advice given to her.

. . . .

In sum, neither parent is able to parent [K.P.-E.] at this time. During the course of this case, another adult has had to be present to provide care and safety for [K.P.-E.]. First, it was the grandmothers who provided that supervision as [K.P.-E.] moved between parental households. Since the couple has married, [K.P.-E.] has been only cared for by the parents in a supervised visitation setting. It is unlikely that the necessity of supervision for the *parents* will cease in the future. More time will not remedy the parenting deficiencies that are present.

The court terminated the mother's parental right pursuant to Iowa Code section 232.116(1)(h) (2013). The mother appeals.

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the

statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

### A. Grounds for Termination.

Iowa Code section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence the child is three years of age or younger, has been adjudicated a child in need of assistance, has been removed from the physical custody of the parent for at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing.

Here, the mother does not contend that any of the grounds for termination under section 232.116(1)(h) are not met, but rather claims that if she given another six months for reunification, termination would not be necessary. "[O]ur legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *D.W.*, 791 N.W.2d at 707. We note that the mother has cooperated with DHS throughout the proceedings and has made some progress; however, even the mother does not dispute the court's finding that K.P.-E. could not be returned to her care at the time of the termination hearing. "Ultimately, the issue is not parental culpability but whether the statutory requirements have been met." *In re A.M.*, ___ N.W.2d ___, ___ n.9, 2014 WL 685401, at *10 n.9 (Iowa 2014). The record indicates that after almost a year of services, the mother were still not in a position to care for K.P.-E. without ongoing DHS involvement. K.P.-E. had never stayed overnight with the mother or even had unsupervised visits once the proceedings began.

The DHS caseworker, all the service providers, and the GAL recommended termination. *See id.*

The mother blames DHS for her inability to care for K.P.-E. at this time. She maintains DHS failed to provide the family with reasonable services. Specifically, she claims DHS failed to provide her with a psychiatric evaluation, as ordered by the juvenile court; with proper parenting instructions; and with increased visitation. First, the DHS worker explained at trial that she had attempted to obtain the psychiatric evaluation for the mother, but she was told by a mental health professional who worked with the mother for medication management that further evaluation was not necessary. Second, although the DHS worker testified that she provided the mother with parenting materials that were focused towards an older age group, the worker indicated that these were not the only materials presented to the mother. As the district court stated:

> The first set of lessons was geared toward children around 1 year old. The second set was for older children. While the materials are geared toward a child older than [K.P.-E], it is also apparent that many of the tips provided would work with disciplining a mobile toddler, such as [K.P.-E]. Given the parents' lack of understanding and the need to repeat much of the things they were expected to learn, getting a head start on some of the discipline techniques that could be used with a toddler or older child was helpful.

Finally, although the mother claims DHS failed to provide her with increased visitation, the mother raised this complaint at prior review hearings and the district court determined that DHS was making reasonable efforts. There is no indication that more supervised visits with the child would have enabled the mother to provide permanent, full-time care for K.P.-E. at the time of the termination hearing.

Here, DHS did provide the family with reasonable services, and there is clear and convincing evidence the grounds for termination, pursuant to section 232.116(1)(h), have been met.

## B. Best Interests of the Child.

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2).

K.P.-E. has not been in the full-time care of either parent since January 2013. She was removed from their custody within one month of leaving the hospital and has spent her entire life in the care of her paternal grandmother and then a foster family. She has never had a permanent home. Termination will enable her to achieve permanency. *See A.M.*, ___ N.W.2d at ___ (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")). As recognized by the district court, the best interest of K.P.-E. is for her to remain with her foster family. They have consistently cared for her and provided her with safety and stability. She has been integrated into their family and they are willing to adopt her if the mother's parental rights are terminated.

We agree with the juvenile court's finding that it is in the child's best interests to terminate the mother's parental rights.

**C. Exceptions or Factors against Termination.**

Finally, we consider whether any exception or factor in section 232.116(3) weighs against termination of parental rights. *P.L.*, 778 N.W.2d at 39. The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in the section to save the parent-child relationship. *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

The mother did not argue any of the exceptions or factors against termination apply in this case. Upon our de novo review, we conclude no exception or factor in section 232.116(3) applies to make termination unnecessary.

**IV. Conclusion.**

There is clear and convincing evidence that grounds for termination exist under section 232.116(1)(h), termination of the mother's parental rights is in the child's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**